**Affirmed as Modified and Memorandum Opinion filed May 30, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-01039-CV

---

## IN THE INTEREST OF L.A.J., A CHILD

---

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2017-05553J**

---

### MAJORITY MEMORANDUM OPINION

N.J. (Mother) appeals from a final order terminating her parental rights and appointing the Department of Family and Protective Services (the Department) as sole managing conservator of her son, L.A.J. (Levi).[1] On appeal, Mother challenges the legal and factual sufficiency of the evidence to support (1) the predicate grounds under which her parental rights were terminated and (2) the finding that termination was in Levi's best interest.

---

[1] We use pseudonyms to refer to appellant, the children, and other family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Department of Family and Protective Services Investigation

In early November 2017, Levi was born prematurely at thirty-four weeks' gestation and tested positive for marijuana. Because of his early arrival and positive drug test results, Levi was immediately placed in the neonatal intensive care unit. Mother also tested positive for marijuana when Levi was born. Mother denied using any illegal drugs while she was pregnant, including marijuana. Mother told the investigator that she only tried marijuana one time when she was seventeen years old.[2] However, Mother did admit that she ate two cookies at a Halloween party, which she subsequently found out were laced with marijuana.

A social worker at the hospital informed the Department investigator that Levi was not suffering from any withdrawals or complications stemming from his marijuana exposure.[3] The social worker also explained that the levels of marijuana in Levi's meconium test were too high to be consistent with eating marijuana-laced cookies on a single occasion.

Mother told the Department's investigator that she had four other children who lived with her husband, their father, (Father) in Dallas. The Department investigator tried to reach Father with the telephone number Mother provided, but the number was disconnected. Mother refused to give the Department the children's address or the name of the school they attend. Mother's other children were between one year old and ten years old. The Department gave Mother a

---

[2] During trial, a hospital record was entered into evidence showing that in August 2017 Mother went into the hospital complaining of intermittent low back pain. This record also indicates Mother requested a confirmation of pregnancy. Mother was confirmed 16 weeks pregnant and her urine test showed positive results for cannabinoids.

[3] A hospital record entered into evidence during trial shows that Levi was diagnosed with "newborn affected by maternal use of other drugs of addiction" at his birth. The "NICU Discharge Note" further states "Maternal drug use complicating pregnancy, antepartum."

family service plan, but she initially refused to sign it. At the time of the Department investigation, Mother was unemployed and receiving food stamps and Medicaid for her children. There were two other Department investigations concerning Mother's children, but both were unconfirmed because, according to the Department, Mother was actively hiding from the Department during those investigations. Mother acknowledged that there was one investigation open because she brought one of her sons to the hospital when he was struggling with feeding. According to Mother, the Department opened an investigation because the baby was underweight.

The investigator spoke to Mother's adoptive mother (Grandmother) with whom Mother was living at the time. Grandmother adopted Mother from Child Protective Services when Mother was two years old. Grandmother said that Mother is a "great mom" to all her children. Grandmother confirmed that Father and the four other children were living in Dallas because their home was destroyed during Hurricane Harvey. Grandmother was unable to give the investigator an address or telephone number for Father.

The Department concluded that Mother was a flight-risk due to the unknown whereabouts of her other children. The trial court named the Department emergency temporary managing conservator of Levi in order to prevent Mother from absconding with him.

### B. Trial

Before testimony commenced the following evidence was entered into evidence: (1) the Department's pretrial removal affidavit, (2) Mother's family service plans, (3) Mother's drug test results, (4) Mother's criminal record, (5) Father's criminal record, (6) Mother's hospital records from August 2017 showing Mother tested positive for cannabinoids at 16 weeks pregnant with Levi, (7)

Mother's hospital record from November 2017 showing Mother and Levi both tested positive for marijuana, (8) the court appointed special advocate's report, (9) a letter of praise from Mother's counselor, (10) attendance verification of parenting education classes, (11) an application approval letter for Mother's new home; (12) paystubs from Mother's employer; and (13) Mother's "employee of the quarter" award.

Trial commenced almost one year after Levi was born. The Department's caseworker, Sylvanna Johnson, testified that Levi is in an adoptive foster home where he is provided with a safe, loving, and structured environment. According to Johnson, his foster parents want to adopt him. Johnson explained that this case began when Levi was born prematurely with marijuana in his meconium. According to Johnson, Mother did not cooperate with the Department at the outset of this case. She refused to provide the agency with the names or addresses of family members, refused to sign a service plan, and would not provide the addresses of her four other children. Johnson testified that Mother had a history with the Department beginning in 2013, which included allegations of neglectful supervision, physical abuse, and medical neglect. However, Johnson explained, all of the referrals resulted in a disposition of "unable to complete," because Mother "ran" from the Department. The Department was unable to locate any of these children after receiving initial reports in those cases.

Johnson further testified that Mother tested positive for marijuana in both her urine and her hair at "very high levels" when Levi was born. According to Johnson, Mother denied using marijuana, but said that she ate a marijuana-laced brownie at a party. After the initial drug test, Mother continued to test positive for marijuana for another six months; however, the levels of marijuana steadily decreased in both her urine and hair tests. As of six months before trial, all of

Mother's drug tests returned negative.

Johnson testified that Mother eventually agreed to a service plan but did not successfully complete it. Mother failed to complete a substance abuse assessment, and still had counseling and group sessions to finish. Mother also failed to provide proof of stable housing or employment. Johnson explained that Mother reported three to four different jobs during the course of the investigation but failed to provide verification for any of them. According to Johnson, Mother was not cooperative at the outset of the case but became increasingly cooperative towards the end. Johnson confirmed that Mother has been visiting with Levi and that the visits are appropriate.

According to Johnson, Father has a criminal history dating back to a 2009 conviction of assault with bodily injury. Father also has a 2012 conviction of assault on a public servant and a 2016 conviction for interference with a public duty. Mother told Johnson that she has daily contact with Father and her four other children but was unable to provide the Department with a working telephone number for Father or the address of her other children.

Next, Terri Wilson, the court appointed special advocate, testified that she believes that it is in Levi's best interest to terminate Mother's parental rights. Wilson also testified that the telephone numbers Mother has given her for Father just ring without answer. Wilson confirmed that according to Mother's testimony during hearings leading up the final trial, Mother claims she has not seen her four other children since Levi was born. Wilson prepared a report that was entered into evidence. Wilson's report indicated that Mother was inconsistent in her supervised visitation with Levi—she frequently arrived late and cancelled three visits.

Wilson testified that she spoke with Grandmother and other family members who state they have not seen the other children in two years and are concerned for

their safety. Additionally, Wilson explained that she learned there is a restraining order against Father prohibiting him from going to Grandmother's home.

Next, Mother testified that she has been working at a gas station for the past six months. Mother confirmed that she was using marijuana when the case began and explained that she ate "a couple" marijuana-laced brownies, but other than that she had not used marijuana since she was eighteen years old. When confronted with the fact that her drug test results indicated chronic marijuana usage, she testified that she was unsure of how that could have happened.

Mother further testified that Father and her four other children are living with Father's sister in Dallas. Mother explained that she talks to her children every day, but not to Father. According to Mother, she and Father separated two years earlier. She explained that Father and the children moved to Dallas because Mother's adoptive-sister threatened to call the Department because she was angry at Mother. At that time, Mother's and Father's relationship was strained so she decided to remain in Houston with Grandmother.

Mother testified that she hasn't been able to visit her children in Dallas because she cannot afford it. According to Mother, she has been approved for housing for four children, but she did not include Levi on her housing application because she did not have custody of him. She explained that she did not have a copy of his birth certificate at the time she submitted the housing application. Mother's plan is for Father to bring the children back from Dallas and for them to live with her in her new home and for Father to find his own place in Houston. Mother further testified that she has been unable to provide proof of employment to the caseworker because she does not have time to get to the caseworker's office during office hours.

Upon questioning, Mother explained that she never took out a restraining

order on Father and that there has never been any domestic violence. Mother said she suffers from post-traumatic stress syndrome because of the lack of acceptance from her adoptive family. Mother testified that she thought the other Department investigations were complete and she did not learn that they were designated as incomplete until she was in the courtroom at trial. Mother denied moving often or hiding from the Department. With regard to her service plan, Mother explained that her counselor had surgery and so they had to reschedule their last visit. Mother said it would be completed by the end of the month. According to Mother, the last time she used marijuana was at the Halloween party on October 31, 2017.

Mother further testified that she plans to start school again and get a degree in business management. Mother explained that she has a sponsor and intends to continue monthly counseling with her current counselor. Mother said that her biological sisters are her support system. Mother testified that she is capable of caring for Levi and that she does not want him to end up in an adoptive home that does not accept him the way her own adoptive family failed to accept her.

Following arguments by counsel, the trial court determined Mother's parental rights should be terminated pursuant to the predicate findings under Family Code sections 161.001(b)(1)(E), (O), and (R) and appointed the Department as sole managing conservator. On November 13, 2018, the trial court signed a final order for termination which stated termination of Mother's parental rights was in Levi's best interest.

## ISSUES AND ANALYSIS

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1); and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Mother raises four issues on appeal. In her first three issues, Mother challenges the trial court's findings under sections 161.001(b)(1)(E), (O), and (R). In her fourth issue, Mother challenges the trial court's finding that termination of her parental rights is in Levi's best interest.

## A. Standard of Review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Despite the constitutional magnitude of parental rights, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) (stating "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right"). Due to the severity and permanency of the termination of parental rights, the law imposes a heightened burden of proof, requiring clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002).

"Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.— Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at

8

266; *In re C.H.*, 89 S.W.3d at 25. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

## B. Predicate Termination Grounds

The trial court terminated Mother's parental rights based on its predicate findings under Texas Family Code sections 161.001(b)(1)(E), (O), and (R).

### 1. Predicate Finding under Subsection E – Endangerment

In making the subsection (E) finding, the trial court found that Mother engaged in conduct or knowingly placed Levi with persons who engaged in conduct which endangered Levi's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(b)(1)(E). A finding of endangerment under subsection (E) requires evidence that the endangerment resulted from the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Termination under subsection (E)

must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id*. A court properly may consider actions and inactions occurring both before and after a child's birth to establish a course of conduct. *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

The Department presented evidence that Mother used marijuana during her pregnancy and that Levi was born with marijuana in his system. Levi did not show any symptoms of withdrawal at the time of his birth. Mother's drug test results steadily declined over the course of the Department's investigation. There was no evidence presented that Mother used marijuana after Levi was removed from her care. While Mother's decision to use marijuana when pregnant with Levi was unwise, it does not rise to the level of endangerment. The Department failed to show a course of conduct that subjected Levi to a life of uncertainty and instability. *See In re A.S.*, 261 S.W.3d 76, 86 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("While unquestionably, an exercise of poor judgment, [mother's] use of marijuana on a single occasion, standing alone, does not rise to the level of a conscious course of conduct."). Reviewing all the evidence in the light most favorable to the finding, we conclude a reasonable factfinder could not have

formed a firm belief or conviction that Mother endangered Levi under subsection (E), and therefore, the evidence of endangerment is legally insufficient. *See In re C.M.C.*, 554 S.W.3d 164, 173 (Tex. App.—Beaumont 2018, no pet.). We sustain Mother's first issue.

## 2. Predicate Finding under Subsection R – Born Addicted

Section 161.001(b)(1)(R) provides that termination is warranted if the trial court finds by clear and convincing evidence, in addition to the best interest finding, that the parent has been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription. Tex. Fam. Code Ann. § 161.001(b)(1)(R). The Family Code states that "born addicted to alcohol or a controlled substance" means a child:

(1) who is born to a mother who during the pregnancy used a controlled substance, as defined by Chapter 481, Health and Safety Code, other than a controlled substance legally obtained by prescription, or alcohol; and

(2) who, after birth as a result of the mother's use of controlled substance or alcohol:

(A) experiences observable withdrawal from the alcohol or controlled substance;

(B) exhibits observable or harmful effects in the child's physical appearance or functioning; or

(C) exhibits the demonstrable presence of alcohol or a controlled substance in the child's bodily fluids.

Tex. Fam. Code. Ann. § 161.001(a).

Both Mother and Levi tested positive for marijuana at Levi's birth. Marijuana is an illegal controlled substance under Chapter 481 of the Health and Safety Code. *See* Tex. Health & Safety Code Ann. §§ 481.002(a)(5), 481.032, & 481.121. Mother also tested positive for cannabinoids in August 2017, just three months before Levi was born. Levi's meconium, a bodily fluid, also tested positive

for marijuana. *See In re A.C.*, 560 S.W.3d 624, 627, n. 5 (Tex. 2018) ("meconium" is the first fecal excretion of a newborn child).

Mother argues that she unknowingly ingested the marijuana-laced baked good and, therefore, it was not within her control to cause Levi to be born with marijuana in his system. Mother does not cite, nor have we found, any legal authority supporting her argument that section 161.001(b)(1)(R) requires intention on the part of the mother. Moreover, the factfinder could have reasonably disbelieved Mother's testimony that she accidently ingested the marijuana-laced baked good, in light of her prior positive drug test and the high levels at which she tested. A social worker at the hospital informed the Department that Levi's meconium results were inconsistent with the ingestion of a single marijuana-laced cookie. The Department's caseworker further testified that Mother's test results levels were "very high." Furthermore, Mother does not deny that she ingested the marijuana-laced baked good. Mother's prior positive drug test, admission of consumption of marijuana, and Levi's meconium test results constitute sufficient evidence under the Family Code that Mother was the cause of Levi being born addicted to a controlled substance. *See In re L.G.R.*, 489 S.W.3d 195, 203 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (finding sufficient evidence to support a finding under subsection (R) where mother admitted to using marijuana during pregnancy and medical records were admitted showing marijuana in the child's bodily fluids).

Under the applicable standard of review, based on the record evidence, a reasonable factfinder could form a firm belief or conviction that, under the Family Code definition, Mother was the cause of Levi being born addicted to a controlled substance. Accordingly, on this record, the evidence is legally sufficient to support the trial court's finding that Mother was the cause of the Levi being born addicted

to a controlled substance. In addition, we conclude that, under the applicable standard of review, the evidence is factually sufficient to support the trial court's finding. *See id.; In re D.D.G.* 423 S.W.3d 468, 474-75 (Tex. App.—Fort Worth 2014, no pet.) (upholding termination of mother's parental rights under subsection (R) after mother admitted smoking methamphetamine during pregnancy and child tested positive for methamphetamine at birth).

Because there is legally and factually sufficient evidence to support the trial court's finding under section 161.001(b)(1)(R), we need not address Mother's argument that the evidence is insufficient to support the trial court's finding under section 161.001(b)(1)(O). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.") We overrule Mother's second and third issues.

## C. Best Interest of the Child

Texas courts presume that keeping a child with his natural parent serves the child's best interest. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Department carries the burden of rebutting that presumption. *Id.* Proof of acts or omissions under section 161.001(b)(1) is probative of the best-interest issue. *See In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The considerations the trier of fact may use to determine the best interest of the child, known as the *Holley* factors, include:

(1) the desires of the child;

(2) the present and future physical and emotional needs of the child;

(3) the present and future emotional and physical danger to the child;

(4) the parental abilities of the persons seeking custody;

(5) the programs available to assist those persons seeking custody in promoting the best interest of the child;

(6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parents' acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the children with a safe environment). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

### 1. Child's Desires

When children are too young to express their desires, the factfinder may consider circumstances, for example, that the child has bonded with the foster family, is well cared for in the current placement, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Levi's foster parents have provided him with a stable, safe, and loving home and would like to permanently make him a member of their family as soon as possible. Mother arrived late to her supervised visitation with Levi, cancelled visits, and has never had custody of him because of her drug use while pregnant.

### 2. Stability of the Home or Proposed Placement

The stability of the proposed home environment is an important

consideration in determining whether termination of parental rights is in the children's best interest. *See In re E.R.W*, 528 S.W.3d at 267. Texas courts recognize as a paramount consideration in the best-interest determination the children's need for a "stable, permanent home." *See In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the children is relevant to the best-interest determination. *See C.H.*, 89 S.W.3d at 28. A fact finder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness to meet the child's needs in the future. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

According to the Department, Mother's physical location has been difficult to ascertain over the years because she frequently moves. Mother has left her four other children in the care of Father without visiting them for over a year. Mother has been living with Grandmother since Levi was born and was only able to obtain stable housing one week before trial commenced. Furthermore, it is unknown if she will be able to bring Levi to her new home because she did not include him on her housing application.

### 3. *Parental Abilities by Those Seeking Custody*

The factfinder may consider a parent's parenting skills in a best-interest analysis. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). Though Mother provided evidence that she has completed parenting classes, Mother has four other young children whom she has not seen in over a year. Meanwhile, Levi's foster parents are currently providing him with a loving safe environment and wish to adopt him as soon as possible.

### 4. *Availability of Programs to Assist Those Seeking Custody in Promoting the Child's Best Interest*

15

The record reflects that Mother took advantage of the parenting classes offered by the Department. Mother also completed some of the tasks on the service plan, such as counseling and appears to have a good relationship with her counselor. However, compliance with a family service plan does not render termination impossible or trump all other termination factors. *In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "The elements of a safe, stable, and happy childhood cannot all be reduced to a checklist in a service plan." *Id*. Mother testified that she now has a house ready for her kids and she plans to use government assistance to provide day-care for her children. Evidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue. *Id*. at 514. Given Mother's history of evading the Department, the factfinder was free to disbelieve Mother's testimony that she is now ready to parent her five children all on her own. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of Mother's rights is in the child's best interest. *See In re E.R.W.*, 528 at 267–68 (considering the mother's drug history and inability to provide a stable home in holding the evidence supported the best-interest finding). We overrule Mother's fourth issue.

## III.   CONCLUSION

We conclude the evidence is legally and factually sufficient to support the trial court's finding that Mother violated section 161.001(b)(1)(R) of the Family Code and that termination of Mother's parental rights is in Levi's best interest. However, the evidence is legally insufficient to support the trial court's findings that Mother endangered Levi under subsection (E). We modify that portion of the trial court

16

judgment and strike from the judgment the finding that Mother violated Family Code subsection 161.001(b)(1)(E) and otherwise affirm the judgment as modified. *See* Tex. R. App. P. 43.2(b).

/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Bourliot, and Zimmerer (Zimmerer, J. concurring as to result only) (Bourliot, J., dissenting opinion to follow).