**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00074-CV**
_____

**IN THE INTEREST OF C.M.C.**

_____

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 17-01-00209-CV**
_____

**OPINION**

C.C. (Mother) appeals the trial court's order terminating her parental rights to her minor son, C.M.C.[1,2] The trial court found by clear and convincing evidence that Mother violated subsections D, E, N, and O of section 161.001(b)(1)[3] of the Family

---

[1] We identify minors in parental-rights termination cases using an alias, in this case initials, to protect the minor's identity. *See* Tex. R. App. P. 9.8.

[2] S.Z.'s (Father) rights were also involuntarily terminated, but he is not a party to this appeal.

[3] We cite the current version of the statute, as the predicate factors alleged by the Department and made the basis of this appeal remain unchanged in substance by the amendments effective as of September 1, 2017.

Code and that termination was in the best interest of C.M.C. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West Supp. 2017).

## Background

The Texas Department of Family and Protective Services (the Department) received a report alleging physical abuse of C.M.C. by Mother. The affidavit in support of the Department's petition claims that at birth, C.M.C. tested positive for amphetamines. The Department's investigator alleged in the affidavit that a social worker from the hospital where C.M.C. was born, stated that Mother tampered with and threw away her urine bag and C.M.C.'s urine bag. The affidavit also claims that two weeks after C.M.C.'s birth, the Department learned Mother's hair follicle also tested positive for amphetamines. Upon receipt of this information, the Department's investigator asked Mother to explain the results. The affidavit alleges Mother admitted using an illegal substance four months prior to the birth of C.M.C., but she refused to divulge the substance.

C.M.C. was removed from Mother, and the Department petitioned the court for temporary managing conservatorship of the child. C.M.C. was then placed with his maternal grandmother, M.C, who had custody of three of the four of Mother's other children. M.C. adopted two of Mother's older children via a private adoption

process, then adopted the third child when Mother voluntarily relinquished her rights after an extensive history with CPS. [4]

Following the removal of C.M.C., the Department prepared a service plan, which Mother signed. The trial court ordered Mother to comply with the service plan and any amendments thereto. Mother was ordered to: (1) participate in a drug and alcohol assessment and follow all recommendations; (2) complete a psychosocial assessment and follow all recommendations; (3) attend all visitations; and (4) attend all court hearings. The trial court found Mother failed to complete the drug and alcohol program, did not complete a psychosocial assessment, and did not maintain regular contact with the Department or the child.

In its original petition, the Department alleged grounds for termination pursuant to subsections D, E, K, M, N, O, P, and R. *See* Tex. Fam. Code Ann. § 161.001(b)(1) (D), (E), (K), (M), (N), (O), (P), (R). However, at trial, the Department sought termination based only on subsections D, E, N, and O. *See id.* § 161.001(b)(1)(D), (E), (N), (O).

The case proceeded to a bench trial. Mother's attorney was present, but Mother did not personally appear at trial. At all relevant times during the termination process and on appeal, Mother has been represented by counsel.

---

[4] The fourth child was in the custody of a relative of that child's father.

The only document admitted into evidence at trial by the Department was a printout from the paternity registry. Counsel for Mother introduced Mother's responses to the Department's request for disclosure. Following the testimony at trial of the CPS caseworker, a CASA volunteer, and M.C., counsel for Mother moved for a directed verdict that was denied.

Mother contends on appeal that the trial court erred in terminating her rights pursuant to subsections D, E, N, and O, and the trial court erred in denying her motion for directed verdict as to subsections D, E, and O. Mother contends the trial court's order with respect to subsections D and E could have particularly dire implications for her in the future. In support of these issues, Mother asserts the evidence is both legally and factually insufficient to terminate based on grounds D and E and specifically requests reversal of the trial court's order with respect to those bases for termination due to the potential ramifications in future proceedings with Child Protective Services.

**Standard of Review**

In parental rights termination cases, the standard of proof required at trial is clear and convincing evidence. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014) (citing *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980)). The no-evidence standard typically employed in a legal sufficiency review does not adequately protect the parent's

4

constitutional interests in a termination case. *In re M.N.G.*, 147 S.W.3d 521, 535 (Tex. 2004) (citing *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002)). Legal sufficiency in a parental termination case is not satisfied by the traditional standard of anything more than a scintilla of evidence. *J.F.C.*, 96 S.W.3d at 264–65. A legal sufficiency review in parental termination cases requires us to determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. *Id.* at 265–66. We examine all of the evidence in the light most favorable to the finding to ascertain whether a reasonable trier of fact could have formed a firm belief its finding was true. *See id.*; *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume disputed facts were resolved by the factfinder in favor of its finding and disregard evidence a reasonable factfinder could have disbelieved. *J.F.C.*, 96 S.W.3d at 266; *J.O.A.*, 283 S.W.3d at 344. If, after review, we determine no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, we must conclude the evidence is legally insufficient. *J.F.C.*, 96 S.W.3d at 266; *J.O.A.*, 283 S.W.3d at 344–45.

In a factual sufficiency review, "a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *J.F.C.*, 96 S.W.3d at 266. In examining factual sufficiency, we will consider whether disputed evidence is such that a reasonable factfinder could not

5

have resolved the disputed evidence in favor of its finding. *Id.* The evidence is factually insufficient, if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction[.]" *Id.*

**Analysis**

To involuntarily terminate a parent's rights, a trial court is required to make two findings. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). First, a parent must have committed a prohibited act under section 161.001 of the Texas Family Code; and second, termination of the parent's rights must be in the child's best interest. *Id.*; *see also* Tex. Fam. Code Ann. § 161.001(b)(1), (2) (listing necessary requirements to terminate parent's parental rights). To support a termination, only one predicate finding under section 161.001(b)[5] is necessary when there is also a finding by the trial court that termination is in the child's best interests. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

At trial, since the Department proceeded with the termination based on D, E, N, and O, it was required to prove by clear and convincing evidence that the

---

[5] Currently, the predicate findings are codified in section 161.001(b). *See* Tex. Fam. Code Ann. § 161.001(b) (West Supp. 2017).

6

termination was in the best interest of the child and that Mother violated subsections D, E, N, or O. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O).

In seven issues on appeal, Mother challenges the trial court's termination of her rights on each of the four grounds asserted by the Department and argues the trial court erred in denying her motion for directed verdict under subsections D, E, and O of the statute.

## A. Constructive Abandonment (N)

Mother asserts the trial court erred in terminating her parental rights pursuant to Texas Family Code section 161.001(b)(1)(N). *See id.* § 161.001(b)(1)(N). Under that subsection, the Department had the burden to establish by clear and convincing evidence that Mother

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than six months, and:
>
> > (i) the department has made reasonable efforts to return the child to the parent;
> > (ii) the parent has not regularly visited or maintained significant contact with the child; and
> > (iii) the parent has demonstrated an inability to provide the child with a safe environment[.]

*See id.*

The Department was named temporary managing conservator of C.M.C. in January of 2017. Trial commenced in this case on January 9, 2018, and concluded

on January 30, 2018. At least eight months had elapsed since C.M.C. was placed in the temporary managing conservatorship of the Department before the trial commenced. During the time the Department had temporary managing conservatorship of C.M.C., the child was placed with M.C., and the Department attempted to maintain contact with Mother but had no contact with her after April of 2017. The caseworker testified she called and sent correspondence to Mother with no response. The caseworker also described the efforts she made to keep current contact information for Mother.

Initially, Mother visited C.M.C. regularly in M.C.'s home, sometimes more than once per week. However, multiple witnesses testified Mother ceased contact abruptly in April of 2017. M.C. testified she confronted Mother on Easter Sunday of 2017, regarding Mother's boyfriend, and Mother had not visited C.M.C. since that date, which was more than eight months before trial commenced. M.C. was uncertain where Mother was living and testified that Mother did not provide any financial support for C.M.C. She also testified she was willing to adopt C.M.C., and she felt it was in C.M.C.'s best interest that Mother's parental rights be terminated. The CASA volunteer testified at trial that the last time she had contact with Mother was in April of 2017, and she had no idea where Mother was living or who she was living with.

From the record of the trial proceedings, we conclude the evidence is both legally and factually sufficient to support the trial court's finding that Mother violated subsection N. *See id.*; *J.F.C.*, 96 S.W.3d at 266.

We must next determine whether the Department established by clear and convincing evidence that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). We analyze a non-exhaustive list of factors, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). There is a strong presumption that the best interest of a child is served by keeping the child with its natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

C.M.C. was approximately one year old at the time of trial. The CASA volunteer testified that M.C. was providing a loving, safe, stable, and drug-free home

9

for C.M.C. The CASA volunteer also testified it would be in C.M.C.'s best interests for Mother's rights to be terminated so M.C. could adopt him. M.C. testified she planned to adopt C.M.C., and he would grow up with his siblings. Mother did not appear at trial, and the testimony at trial established she did not have custody of any of her children, which tends to show she lacked parental abilities. M.C., on the other hand, had custody of three of C.M.C.'s siblings and had shown her ability to care for and parent multiple children. M.C. testified C.M.C. was doing well in her care, and she is able to provide him with a stable and drug-free home. M.C.'s adoption of C.M.C. would lead to a permanent resolution of his care. Mother's abandonment of C.M.C., an infant, weighs in favor of a finding that the existing parent-child relationship is not a proper one. There was no testimony or evidence offered at trial that would excuse Mother's actions. After examining the evidence at trial in light of the *Holley* factors, the evidence is legally and factually sufficient to support the trial court's finding that termination was in the child's best interests. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *Holley*, 544 S.W.2d at 371–72.

Based on the record before us, we conclude the evidence is both legally and factually sufficient to support the trial court's termination of Mother's parental rights based on a predicate finding under subsection N that Mother constructively

10

abandoned C.M.C., and termination was in the child's best interests. We overrule this issue on appeal.

In light of our conclusion the evidence is sufficient to support the trial court's finding on subsection N, we need not make a determination as to its findings on the other predicate grounds, subsections D, E, and O. *See A.V.*, 113 S.W.3d at 362. However, Mother urges us to review the sufficiency of the evidence to support the findings under subsections D and E because they may have negative collateral consequences. *See In re J.J.G.*, No. 14-15-00094-CV, 2015 WL 3524371, *4 (Tex. App.—Houston [14th Dist.] June 4, 2015, no pet.) (mem. op.). Those consequences include the binding nature of the endangerment findings on the best-interest analysis in this case and their potential to support termination of her relationship with another child under subsection M in a future case. *Id.* Subsection M permits termination based on a finding that the parent's previous conduct violated subsection D or E or substantially equivalent provisions of another state's law. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(M). "Because this is the only possible appeal of those findings, which would be binding in a future proceeding, we will address Mother's arguments" on these subsections. *See In Interest of C.M.-L.G.*, No. 14-16-00921-CV, 2017 WL 1719133, *8 (Tex. App.—Houston [14th Dist.] May 2, 2017, pet. denied) (mem. op.) (reasoning that due to a finding that a parent's conduct violated

subsection D or E would be binding in future proceedings, the appellate court addressed mother's arguments); *In re J.J.G.*, 2015 WL 3524371, at \*4.

**B. Collateral Consequence and Endangerment Finding Under (D) and (E)**

In issues one through four, C.C. argues the trial court erred in denying her motion for directed verdict on subsections D and E and erred in terminating her parental rights pursuant to those subsections of the Texas Family Code. Mother argues the evidence is legally and factually insufficient to support termination on those grounds.

In this case, the Department was required to prove by clear and convincing evidence that Mother:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the child; [and]

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child[.]

*See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E*); see also In Interest of D.S.J.*, No. 01-17-00678-CV, 2018 WL 1003635, at \*6 (Tex. App.—Houston [1st Dist.] Feb. 22, 2018, pet. denied) (mem. op.)

"'To endanger' means to expose a child to loss or injury or to jeopardize a child's emotional or physical health." *See In re S.R.*, 452 S.W.3d 351, 360 (Tex.

12

App.—Houston [14th Dist.] 2014, pet. denied) (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). Endangerment under subsection D may be established by evidence regarding the child's environment. *In Interest of A.A.L.A.*, No. 14-15-00265-CV, 2015 WL 5437100, at *5 (Tex. App.—Houston [14th Dist.] Sept. 15, 2015, no pet.) (mem. op.); *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). A child is endangered when a parent is aware but consciously disregards that an environment creates the potential for danger. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Subsection D cannot constitute the basis for termination if the parent was unaware of the endangering environment. *See In re T.H.*, 131 S.W.3d 598, 603 (Tex. App.—Texarkana 2004, pet. denied).

An endangerment finding under subsection E must be established by showing it was the result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). It requires more than a single act and must show a conscious course of conduct. *Id.* Under subsection E, a court may consider actions occurring before and after a child's birth to establish a "course of conduct." *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.). Evidence of drug and alcohol abuse can be considered in an endangerment finding. *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied).

In this case, the Department failed to present any evidence at trial to establish that Mother was aware that C.M.C. was being placed in a dangerous environment. While Mother's alleged drug use during the pregnancy would have sufficed,[6] the only evidence of Mother's drug use during her pregnancy offered by the Department was the hearsay testimony of the Department caseworker, which was not allowed into evidence after Mother objected. The affidavit in support of the Department's emergency petition contained allegations of C.M.C.'s positive drug test, which were also hearsay.

_____

[6] A parent's illegal drug use exposes the child to the possibility of the parent being impaired or imprisoned and may support a finding of endangerment. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App. — Houston [1st Dist.] 2009, pet. denied). There are many cases in which courts have terminated a parent's rights and found the parent endangered the child under subsection D or E when parental drug use has been involved; however, we find these distinguishable from this case given the scant evidence before us. Specifically, these other cases involved sufficient evidence of the parent's drug use. *See In Interest of C.M.-L.G.*, No. 14-16-00921-CV, 2017 WL 1719133, *8 (Tex. App.—Houston [14th Dist.] May 2, 2017, pet. denied) (mem. op.) (explaining that the drug test results of both parents were admitted, and mother acknowledged on the record her children were removed because of her drug use); *In Interest of L.D.*, No. 01-17-00471-CV, 2017 WL 6374663, *4 (Tex. App.—Houston [1st Dist.] Dec. 14, 2017, pet. denied) (mem. op.) (indicating that the court heard testimony that mother had abused alcohol and drugs, which was supported by positive drug tests, and that she had been arrested for driving while intoxicated with the child in the car); *In Interest of D.S.J.*, No. 01-17-00678-CV, 2018 WL 1003635, *1 (Tex. App.—Houston [1st Dist.] Feb. 22, 2018, pet. denied) (mem. op.) (discussing evidence admitted into trial included, among other things, positive drug test results for both parents as well as testimony from both parents).

14

At trial, while the Department caseworker testified regarding her review of the file, the trial court sustained Mother's hearsay objection and only admitted it for the limited purpose of proving the reasons for the initial removal of the child. The Department did not seek to admit the affidavit in support of its emergency petition for removal.

The Department failed to have admitted as evidence any of C.M.C.'s medical records, Mother's medical records, lab reports, or the results of Mother's or C.M.C.'s drug screen. Indeed, the Department failed to offer any records as evidence at trial. Nor did the Department call anyone from the hospital to testify regarding the results of the drug tests performed on C.M.C. at birth or to have its own investigator testify. While the trial court has wide latitude in the admission of evidence, Mother's counsel asserted a proper hearsay objection to the tenuous evidence offered by the Department from the caseworker that C.M.C. tested positive for amphetamines at birth and the trial court only admitted the statement for the limited purpose of supporting the Department's initial removal of the child from the parent. *See* Tex. R. Evid. 801, 802. Absent competent evidence that C.M.C. tested positive for amphetamines at birth and that Mother's drug use endangered the health or safety of the child, a finding that Mother endangered the child under D or E is unsupported by the record. Further, there was no evidence offered to show Mother engaged in

15

any acts or omissions endangering C.M.C. that would support a finding she violated D and E with respect to this child. C.M.C. was removed from Mother shortly after birth and had been in the constant care of his grandmother, M.C.

There was testimony from M.C. regarding Mother's history of drug use, but she admitted she had no personal knowledge regarding whether Mother was addressing her drug problem. M.C. also testified that Mother overdosed some years prior to the birth of C.M.C., and that at the beginning of the case involving C.M.C., she went to Mother's residence and observed "white stuff" on a mirror with a razor blade, but she admitted she did not have any personal knowledge that it was Mother's or that Mother used it. Over strenuous objection from Mother's counsel, M.C. also testified she had known Mother to use Vicodin and "meth" but she could not specify if it was before, during, or after Mother's pregnancy with C.M.C. She also admitted she did not know if Mother was addressing her drug problem, and it was possible she could be enrolled in another drug program. Testimony regarding Mother's overdose years prior or testimony of a suspicious substance on a mirror with no knowledge of what the substance actually was is insufficient to establish Mother endangered C.M.C.

Involuntary termination proceedings implicate fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Due to the magnitude and

16

permanence of termination of parental rights, the Department's burden of proof is by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001(b). Here, the Department failed to meet that burden with respect to subsections D and E. Reviewing all of the evidence in the light most favorable to the finding, we conclude a reasonable factfinder could not have formed a firm belief or conviction that Mother endangered C.M.C. under subsections D or E, and therefore, the evidence of endangerment is legally insufficient. *See id.* § 161.001(b)(1)(D), (E); *J.O.A.*, 283 S.W.3d at 344–45; *J.F.C.*, 96 SW.3d at 266. Because the evidence is legally insufficient to support the trial court's finding that Mother violated D and E, we do not address the factual sufficiency of the evidence. We sustain Mother's first four issues.

## Conclusion

We conclude the evidence is legally and factually sufficient to support the trial court's finding that Mother violated section 161.001(b)(1)(N) of the Texas Family Code, and termination of Mother's rights to C.M.C. is in the best interest of the child. However, the evidence is legally insufficient to support the trial court's findings that Mother endangered her child under subsections D and E. We modify that portion of the trial court judgment and strike from the judgment the findings that Mother

violated Texas Family Code subsections 161.001(b)(1)(D) or (E) and otherwise affirm the judgment as modified. *See* Tex R. App. P. 43.2(b).

AFFIRMED AS MODIFIED.

_____
CHARLES KREGER
Justice

Submitted on May 23, 2018
Opinion Delivered July 12, 2018

Before McKeithen, C.J., Kreger, and Horton, JJ.