# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-19-00174-CV
_____

### IN THE INTEREST OF R.S.C. JR., Appellant

---

### On Appeal from the 356th District Court
### Hardin County, Texas
### Trial Cause No. 59344

---

### MEMORANDUM OPINION

Following remand for appointment of new counsel and re-briefing, Appellant

R.S.C. (Father) appeals the trial court's order terminating his parental rights to

R.S.C. Jr.[1, 2] A jury found by clear and convincing evidence that Father violated

subsections (D), (E), (M), (N), (O), and (P) of Texas Family Code section

---

[1] We identify minors in parental-rights termination cases using an alias, initials in this case, to protect the minor's identity. *See* Tex. R. App. P. 9.8.

[2] The trial court also terminated K.A.C.'s (Mother) parental rights, but she is not a party to this appeal.

1

161.001(b)(1) and that termination was in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2). The trial court subsequently entered an order terminating Father's rights based on predicate grounds (D), (E), (M), (N), (O), and (P). He challenges the legal and factual sufficiency of the evidence for predicate grounds (D), (E), and (P). Father does not challenge the evidence supporting predicate grounds (M), (N) or (O) or that termination was in the child's best interest. We affirm the trial court's judgment terminating Father's rights.

## I. Background

R.S.C. Jr. was born to Father and Mother in May 2018. The Texas Department of Family and Protective Services (the Department) removed R.S.C. Jr. shortly after his birth. At the time of trial, he was one year old.

### A. The Removal

In May of 2018, Mother delivered R.S.C. Jr. at thirty-seven weeks gestational age in an ambulance in the driveway of their home. The day after delivery, the Department received the matter following allegations of neglectful supervision of multiple children ranging in age from infant to ten years. The allegations leading to the Department's intake included that when Mother delivered R.S.C. Jr., she tested positive for amphetamines and cocaine. Additionally, the baby's urine tested positive for amphetamines immediately after birth.

2

## B. Trial Testimony and Evidence

### 1. The Department's Witnesses

Department Investigator Trahan testified at trial. Trahan confirmed she received an intake involving R.S.C. Jr. on May 24, 2018. Trahan testified that at birth, R.S.C. Jr. and Mother's urine tested positive for methamphetamine, and they assigned her to investigate on that basis. Trahan spoke with the parents in the hospital the following day. Trahan testified that the parents had a prior CPS history, and Father expressed frustration about the Department's involvement and resisted speaking with her. Trahan explained that Father's behavior caused enough of a concern that a security guard was stationed outside the hospital room door while she spoke with the parents.

The parents told Trahan they resided in Colorado, but they could not provide a zip code, and the Department could not confirm the address. Mother told the investigator that she was unemployed, and Father was self-employed working construction, which is why they came to Texas. Father told Trahan they were living with a relative in Hardin County.

During their meeting, the investigator asked about two older children, one of Mother's sons from a previous relationship and a daughter of Mother and Father's. Mother told Trahan the older children were with her mother, and they would be

3

taking the children with them when they returned to Colorado. Trahan testified that this alarmed her, because prior to meeting with the parents, she reviewed their CPS history and knew that the Department had already removed the two older children from Mother and Father, their rights had been terminated to those children, and the children were in foster care. Trahan testified regarding one of the Department's exhibits, an order of termination from a prior proceeding indicating that Father's rights to their older daughter were terminated on (D) and (E) grounds, which meant he "knowingly placed or allowed a child [to remain] in a situation that would endanger her physical welfare and that he engaged in conduct that would endanger her physical welfare."[3] *See id.* § 161.001(b)(1)(D), (E).

Trahan testified that the parents initially denied any current or history of substance abuse. Trahan explained that she informed the parents she knew about their history and the prior termination due to substance abuse, at which point Father left the hospital room. Trahan said that when he left, Mother admitted she used methamphetamines and cocaine within the last three months of her pregnancy. In addition to this admission about her drug use, Mother told Trahan that she may have tested positive because the relative she and Father lived with also used

---

[3] The prior order of termination also indicated a trial court terminated Mother's rights to her older son and their older daughter based on predicate grounds (D) and (E). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E).

4

methamphetamines. Trahan explained that Mother and Father lived with a relative that abused methamphetamines, and there was an additional concern about the child returning to a home where there was drug usage.

Trahan testified that she asked Mother and Father to submit to drug testing the day of the meeting at the hospital, but they did not voluntarily submit to testing until five days later. Trahan did not know if they used that time "to clean out their systems" but she explained to the parents that because of the delay in testing, it would not give her an accurate understanding of their current drug use.

Trahan testified Father contributed to the neglect of the child because of his history of substance abuse and his chosen living arrangement which made Father an inappropriate placement for R.S.C. Jr. Trahan also expressed concerns about Mother's drug use while she was pregnant, Father's failure to intervene, and a married couple with a newborn living in a home where drugs were being abused. Trahan opined that a father who allowed a mother to continue using drugs and to live in a home knowing drug use occurred there contributed to the neglect of the child.

The hospital released R.S.C. Jr. into the Department's care after birth. A meeting was scheduled a few days later so that Mother and Father could visit R.S.C.

5

Jr. Trahan said that at the conclusion of their visit with R.S.C. Jr., both parents were arrested on outstanding criminal warrants.

Department Caseworker Copeland also testified. She said the parents' service plans were tailored with their incarceration in mind. Copeland explained that Father was supposed to contact her upon his release from jail on April 22, 2019. She testified that he did not contact her before she went on leave on April 30, 2019, but believed that Father contacted the caseworker who covered for her, although she did not know when. To her knowledge, Father did not complete any services involving drug rehabilitation.

Copeland also testified that it would be in the child's best interest to terminate Father's rights because Father could not show any stability and had been incarcerated on multiple criminal charges during the year before the trial. Copeland told the jury that Father's criminal history included multiple theft charges and controlled substance charges from various counties, including Hardin County, Brazos County, and Calcasieu Parish, Louisiana. It was Copeland's testimony that because Father failed to comply with drug testing or other required services under his plan, it would endanger R.S.C. Jr. to return the child to Father.

Department Caseworker Arroyo, who covered the matter while Copeland was on leave, testified as well. Arroyo testified that Father contacted her fifteen days

6

after his release from jail. She testified that Father failed to complete any drug and alcohol assessments or services required of him.

The guardian ad litem testified that there was a substantial risk of danger to R.S.C. Jr. if the child was returned to Father. She said despite Child Protective Services providing services to the parents while they were incarcerated, there had been no change by the parents and there had already been a previous termination of their parental rights to other children. The guardian ad litem explained that the prior termination concerned her because it was on endangerment grounds of (D) and (E). She explained that this was an issue because it showed a pattern of conduct dangerous to a child. She also believed that continued drug use was a major concern in a case like this and the parents had not done any type of drug rehabilitation.

### 2. Father's Testimony

Father testified that he had been incarcerated for almost eleven months prior to trial. Father testified that he also had a matter pending in Louisiana in which he entered into a plea bargain and agreed to probation. He also discussed some of his prior criminal convictions. Father testified that R.S.C. Jr. was born in May 2018, and Father admitted to only being clean from June of the same year. Father testified that he had problems with methamphetamines for about five years. Although Father

7

testified that he completed drug services in prison, he did not provide any documentary evidence at trial.

Father testified that he knew the home environment he lived in involved his brother abusing drugs and Mother abusing drugs. He admitted during the time Mother was pregnant with R.S.C. Jr. and while they lived with his brother, there was a lot of drug use, and despite initially denying that he used drugs during this time, he later admitted he used drugs also. According to Father, Mother's drug use concerned him, and he tried to stop her. Father admitted lying to the Department's investigator. Father testified that they terminated his rights to his older daughter because of his drug problem at that time. Father testified that drugs were not a problem for him anymore and reasoned he did not complete rehab because he did not need it. Father testified he had two convictions for controlled substances, three theft convictions, and a burglary charge still pending against him. Father also testified that he sold methamphetamines for almost twenty years between 1997 and 2016. Father testified that he quit selling drugs, but then started using the drugs.

## II. Standard of Review

Termination cases require a heightened standard of review. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Before a trial court can involuntarily terminate a parent's rights, the Department must prove by clear and convincing evidence one of

8

the statutory predicate findings and that termination is in the child's best interest. *See id.*; *see also* Tex. Fam. Code Ann. § 161.001(b)(1), (2). The Family Code defines "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007.

In conducting a legal sufficiency review, we examine all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014); *In re J.O.A.*, 283 S.W.3d 336, 344–45 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). We give appropriate deference to the factfinder's conclusions, meaning we assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could. *In re E.N.C.*, 384 S.W.3d at 802 (quoting *In re J.F.C.*, 96 S.W.3d at 266). Evidence that raises no more than a surmise or suspicion will not suffice in cases requiring clear and convincing evidence. *In re K.M.L.*, 443 S.W.3d at 113. Rather, the evidence must be capable of producing a firm belief or conviction that an allegation is true. *Id.*

Upon a parent's factual sufficiency challenge to the evidence, we review all the evidence, including that which is disputed or conflicting. *In re J.O.A.*, 283

9

S.W.3d at 345. In a factual sufficiency review, an appellate court must weigh whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due consideration to evidence the factfinder could reasonably find clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. Considering the entire record, if the disputed evidence is so significant that a reasonable factfinder could not have reasonably formed a firm belief or conviction, the evidence is factually insufficient. *In re J.O.A.*, 283 S.W.3d at 345 (quoting *In re J.F.C.*, 96 S.W.3d at 266).

Typically, only one predicate ground is required plus the best interest finding to uphold a termination of parental rights. *See In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (noting "only one ground is required to terminate parental rights"). However, subsection (M) provides that a parent's rights may be terminated if clear and convincing evidence establishes the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state[.]" *See* Tex. Fam. Code Ann. § 161.001(b)(1)(M); *see also In re N.G.*, 577 S.W.3d at 234.

> When due process requires the heightened standard for termination of parental rights by clear and convincing evidence, it follows that due process also requires a heightened standard of review of a trial court's findings under section 161.001(b)(1)(D) or (E), even when another

> ground is sufficient for termination, because of the potential
> consequences for parental rights to a different child.

*In re N.G.*, 577 S.W.3d at 235. If a parent challenges the (D) or (E) finding on appeal, even in the face of another finding supporting termination, and an appellate court denies review of the (D) or (E) finding, it eliminates a parent's only opportunity for review of a finding that will be binding on his or her parental rights to other children. *Id.*; *see also In re C.M.C.*, 554 S.W.3d 164, 171 (Tex. App.—Beaumont 2018, no pet.) (reviewing (D) and (E) findings because of their binding nature in future proceedings, even though another ground supported termination).

### III. Analysis

### A. Predicate Grounds

Father does not challenge the sufficiency of the evidence to support the jury's findings on predicate grounds (M), (N), or (O).[4] Accordingly, we do not address those grounds in our analysis. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see also* Tex. R. App. P. 47.1. The unchallenged predicate findings are binding on this court and sufficient to affirm the termination order. *See In re E.A.F.*, 424 S.W.3d

---

[4] At trial, the Department admitted a prior termination order showing another court terminated Father's parental rights to his daughter based on subsections (D) and (E), which supports termination in the present case under subsection (M). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(M). Father also testified that a court terminated his rights to his daughter, and he attributed the termination to his drug use.

742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Father challenges the legal and factual sufficiency of the evidence to support the jury's finding on predicate grounds (D), (E), and (P) in this case. Since an affirmative finding of endangerment under (D) or (E) has potential consequences for a parent's rights to different children in future proceedings, we review these findings. *See In re N.G.*, 577 S.W.3d at 235; *In re C.M.C.*, 554 S.W.3d at 171.

Texas Family Code subsection 161.001(b)(1)(D) permits the termination of a parent's rights if the trier of fact finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Texas Family Code subsection 161.001(b)(1)(E) permits the termination of a parent's rights if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(E).

"Endangerment under subsection (D) arises from a child's environment and a parent's disregard for the potential for danger created by the environment." *In re I.V.H.*, No. 01-19-00281-CV, 2019 WL 4677363, at *5 (Tex. App.—Houston [1st

Dist.] Sept. 26, 2019, no pet. h.) (mem. op.) (citing *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). Subsection (D)'s focus is the child's environment; however, parental conduct may create an endangering environment. *Id.* (quoting *In re M.T.W.*, No. 01-11-00162-CV, 2011 WL 6938542, at *12 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, no pet.) (mem. op.)). Under subsection (D), parental rights may be terminated based on a parent's single act or omission. *In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied).

A finding under (E) can be "evidenced not only by the parent's acts, but also by the parent's omissions or failures to act." *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied). "Endangerment under subsection (E) arises when a parent's course of conduct jeopardizes the child's emotional or physical health." *In re I.V.H.,* 2019 WL 4677363, at *5 (citing *In re A.J.H.*, No. 01-18-00245-CV, 2019 WL 190050, at *7 (Tex. App.—Houston [1st Dist.] Jan. 15, 2019, no pet.) (mem. op.)). Termination under subsection (E) requires more than a single act or omission and "'a voluntary, deliberate, and conscious course of conduct by the parent is required.'" *In re L.E.S.*, 471 S.W.3d 915, 925 (Tex. App.—Texarkana 2015, no pet.) (quoting *Perez v. Tex. Dep't of Protective and Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)); *see also In re M.T.W.*, 2011

13

WL 6938542, at *12. An inference of danger to a child's well-being may come from parental misconduct. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.P.*, 498 S.W.3d 157, 171 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

Generally, conduct endangers the emotional and physical well-being of a child if it subjects the child to a life of uncertainty and instability. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). A finding under subsection (E) is supported by evidence, including imprisonment, that shows a course of conduct that endangers the physical or emotional well-being of the child. *Boyd*, 727 S.W.2d at 533–34. "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.–Houston [1st Dist.] 2009, pet. denied) (illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct endangering a child).

Since evidence of statutory grounds (D) and (E) is often interrelated, we may consolidate our review of the evidence supporting these grounds. *See In re M.Y.G,*

423 S.W.3d 504, 510 (Tex. App.—Amarillo 2014, no pet.) (citations omitted); *see also In re A.J.H.*, 2019 WL 190050, at \*8.

In the present case, Father testified that he dealt drugs between 1997 and 2016, for approximately twenty years, when he stopped dealing drugs and began abusing drugs.[5] He told the jury that he stopped dealing when he "started getting high on [his] own supply." Despite his denial of drug use around the time of removal, evidence showed that R.S.C. Jr. was born in May of 2018, removed immediately thereafter, and Father testified he had only been clean since June of 2018—the inference being that Father continued using drugs after the child's birth and removal.[6] A parent's continued drug use after a child's removal is conduct placing his parental rights in jeopardy, which we may consider as establishing an endangering course of conduct. *See In re S.R.*, 452 S.W.3d 351, 361–62 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Additionally, Father testified that another court previously terminated his rights to his older daughter, and he used drugs during that time. Although the Department removed R.S.C. Jr. directly from the hospital, and he did not go home with Father, "a child need not suffer actual

---

[5] Father later testified that he stopped selling drugs in 2014 or 2015.

[6] We also note that Father testified that he has been sober for a year but admitted that he was incarcerated for the majority of that time.

injury to have been endangered and [] a parent's drug use and its effects might establish an endangering course of conduct." *See In re J.O.A.*, 283 S.W.3d at 345.

The jury heard testimony from Father and the Department's investigator that at the time of R.S.C. Jr.'s birth, he and Mother lived with Father's brother, and drug use was occurring in the home. Father provided inconsistent testimony regarding his own drug abuse while living with his brother, and the jury may have determined his denials were not credible. Despite a lengthy history of drug abuse, Father testified he did not need drug rehabilitation. Father's testimony and other evidence at trial established that he had a lengthy criminal history for drug offenses, theft, and burglary. Father's drug use and lengthy criminal history, before and after R.S.C. Jr.'s birth, establish an endangering course of conduct. *See id.* Father was incarcerated during the pendency of the termination case. During trial, Father also testified he had a criminal charge for burglary pending in another state. "Evidence of frequent arrests and incarceration may constitute grounds for termination." *Pruitt v. Tex. Dep't of Family & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *5 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.) (citing *Boyd*, 727 S.W.2d at 533–34).

After reviewing all the evidence in the light most favorable to the findings, we determine a reasonable factfinder could have formed a firm belief or conviction

16

that Father endangered the physical or emotional well-being of the child, R.S.C. Jr. under subsections (D) and (E). *See In re K.M.L.*, 443 S.W.3d at 113; *In re J.F.C.*, 96 S.W.3d at 265–66; *In re E.H.*, No. 2-09-134-CV, 2010 WL 520774, at \*8 (Tex. App.—Fort Worth Feb. 11, 2010, no pet.) (mem. op.). Likewise, after considering the evidence in its entirety, we determine that the disputed and conflicting evidence is not so significant that a reasonable factfinder could not have resolved it in favor of its finding. *See In re A.C.*, 560 S.W.3d at 631; *In re J.O.A.*, 283 S.W.3d at 345. We conclude the evidence at trial was legally and factually sufficient to support the jury's findings that Father endangered R.S.C. Jr. under both subsection (D) and (E).

Father's own testimony established he and Mother knowingly lived in an environment where illegal drug use occurred. Father's testimony also established a lengthy list of criminal convictions, prior drug use, and decades of drug dealing, which showed he engaged in a conscious course of conduct that could lead to instability and uncertainty for the child. *See In re A.J.M.*, 375 S.W.3d at 606; *Walker*, 312 S.W.3d at 617; *see also Boyd*, 727 S.W.2d at 533–34; *In re R.W.*, 129 S.W.3d at 739. Having determined the evidence legally and factually sufficient to support the termination on grounds (D) and (E), we do not address subsection (P). *See In re N.G.*, 577 S.W.3d at 234–36.

17

## B. Best Interest

Father does not challenge that termination of his parental rights would be in R.S.C. Jr.'s best interest. Rather, he concedes the record contains legally and factually sufficient evidence to support this finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2). The trial court's unchallenged best interest determination binds this court. *See In re E.A.F.*, 424 S.W.3d at 750. Accordingly, we do not analyze the unchallenged best interest finding. *See In re A.V.*, 113 S.W.3d at 362; *see also* Tex. R. App. P. 47.1.

## IV. Conclusion

Because Father did not challenge the termination on predicate grounds (M), (N), or (O), or that termination was in the child's best interest, we affirm the termination on those grounds. We also conclude the evidence was legally and factually sufficient to support the jury's determination that Father violated predicate findings (D) and (E) and affirm the termination on those grounds.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on October 15, 2019
Opinion Delivered November 14, 2019

Before McKeithen, C.J., Kreger and Johnson, JJ.

18