**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00317-CV**
_____

**IN THE INTEREST OF E.M. AND E.B.**

On Appeal from the 317th District Court
Jefferson County, Texas
Trial Cause No. F-235,262

**MEMORANDUM OPINION**

Following a bench trial, the trial court terminated Father's parental rights to his children, E.M. and E.B., based on predicate findings under Texas Family Code subsections 161.001(b)(1)(D), (E), (O), and (P) and a finding that termination was in the best interest of the children. *See* Tex. Family Code Ann. § 161.001(b)(1)(D), (E), (O), (P), (2).[1, 2] In five issues, Father challenges the legal and factual sufficiency

---

[1] In parental rights termination cases, to protect the identity of the minors, we refer to the children and their family members by a pseudonym or initials. *See* Tex. R. App. P. 9.8(b)(2).

[2] The trial court also terminated Mother's parental rights, but she is not a party to this appeal.

1

of the evidence supporting predicate grounds D, E, O, and P and the sufficiency of the evidence supporting the trial court's best interest finding. We will affirm.

## I. Background

On June 17, 2019, the Department of Family and Protective Services ("Department") filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship naming E.M. and E.B. as the subjects of the suit.[3] The Department supported the petition with the affidavit of Sheila White, an intake officer for the Department. In the affidavit, Ms. White swore that the Department received a report that Father left E.M. and E.B. in the care of their bedridden Grandmother for periods of time, some as long as a week at a time, when E.M. was younger than two years and E.B. was only six-months old. Grandmother reported that she could not care for E.B., Father failed to buy groceries for the home, and Grandmother could not afford food or medicine. Grandmother expressed fear that Father would physically harm her for reporting him to the Department since he had a history of violent behavior.

The affidavit further averred that a caseworker, Gabrielle Smith, went to the home on June 14, 2019. Smith reported there was no food except cans of baby formula. She observed dog feces and urine on the floor and a roach infestation so

---

[3] Several hours later that same day, the Department filed its first amended original petition, which seemingly corrected the spelling of E.B.'s name.

2

severe they were crawling on her while she was in the residence. Smith also reported that another tenant who was present "appeared under the influence[,]" and she observed two unidentified men smoking "something" in the garage. The affidavit further averred that while Mother submitted to a drug test, Father refused.

The affidavit mentioned a prior investigation of inadequate care and supervision of the children. The affidavit stated that "[t]he father smokes marijuana all day[,]" E.M. had wandered out the front door a couple of times, there were no utilities due to nonpayment, and there was a history of domestic violence in the home. The caseworker advised at that time, that she "spoke to the father who stated the mother is using drugs and he left the children with her but she took off with the children."

The affidavit also described the parents' previous history with the Department from June and August of 2018, in which there was "Reason to Believe" Mother was neglectful in her supervision of E.M., but the Department "Ruled Out" neglectful supervision and physical abuse of E.M. by Father. The affidavit requested temporary managing conservatorship of E.M. and E.B. and stated

> I am concerned with the safety and welfare of the children, [E.M. and E.B.] are placed in a home that is a threat to their health and safety. The home conditions place them at substantial risk of harm. The parents refusing to place the children out of the home indicates their non-protectiveness, and their unwillingness to keep the children safe. The children need protective caregivers that will keep them safe from a harmful environment.

On June 17, 2019, following the initial show cause hearing, the trial court signed an order appointing the Department as temporary managing conservator of E.M. and E.B.[4]

## II. Trial Evidence and Trial Court's Findings

### A. Testimony of Stephanie McGlory

Stephanie McGlory, a Department caseworker, testified at trial. She confirmed Mother's rights had already been terminated, and that initially the Department worked on reunifying Father with his children. But after the Department removed the children, the Department's position changed, and the Department decided to ask the trial court to terminate Father's rights. McGlory explained the Department, at one time, considered returning the children to Father under a monitored plan, but during its investigation changed course after discovering information that raised concerns. In preparing for a monitored return, a prior caseworker assigned to the case spoke to the police department and learned that

---

[4] The final hearing as to the termination of Father's rights did not commence until April, 29, 2021, had to be recessed several times, and ultimately concluded on August 26, 2021; however, on June 15, 2020, the trial court signed an order extending the dismissal deadline to December 18, 2020, finding "that extraordinary circumstances necessitate the subject child(ren) remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator continues to be in the best interest of the child[.]" *See* Tex. Fam. Code Ann. § 263.401. On December 8, 2020, the trial court extended the dismissal deadline again pursuant to the Texas Supreme Court's Emergency COVID Orders until May 10, 2021.

4

Father had been no-billed on sexual assault allegations; however, during the investigation the Department also learned that Father told law enforcement he continued to smoke marijuana. McGlory confirmed Father's smoking of marijuana was a concern, because CPS was working with Father in an effort to create a safe home environment in which the children could return.

McGlory also testified the Department tried to schedule a drug test for Father at the first of the month before the trial, but the urinalysis results of the test Father took were inconclusive. There was a concern that there had been tampering with the sample. Pending the results of a new test, the trial court recessed the trial.

The trial resumed in the middle of May 2021. When the trial resumed, McGlory said that Father's recent urinalysis and hair follicle tests were positive for marijuana. Additionally, McGlory testified Father had sent text messages to her that threatened both her and the judge. The trial court warned Father to stop harassing McGlroy and discontinue making any threats or the court would hold Father in contempt. The trial court announced a recess to allow the Department to investigate placing the children with Father's sister, among other things.

On August 26, 2021, the trial resumed. McGlory testified Father did not complete the services required by his plan. McGlory explained the Department had concerns about domestic violence based on its investigation between Father and

5

Mother at the outset of the case, and so Father's rights were limited to supervised access to the children to a few hours due to the Department's concerns.

Even after Father was evaluated and tested for taking illegal drugs, McGlory explained that Father failed to not remain sober. For example, McGlory said that in early July 2019, Father tested positive for PCP. In late September 2019, Father tested positive on marijuana. In the second week of May 2021, which was after the trial commenced, Father tested positive again for marijuana. While the Department's case against Father was pending, police were also investigating a woman's claim that Father sexually assaulted her while he was smoking marijuana in his home. Given Father's history, McGlory testified that in her opinion, it would be inappropriate for the children to be placed with Father based on safety concerns that exist in the Father's home. McGlory also testified that in her opinion Father never gave up using marijuana, and she attributed his decision to continue using that substance as a factor that explained why he was willing to neglect his children.

Of additional concern, McGlory noted the Department was aware of other cases involving Adult Protective Services that involved allegations that Father had emotionally and verbally abused Grandmother. McGlory confirmed that Father and Grandmother both had anger issues, given what she had learned about the investigations conducted by Adult Protective Services. McGlory explained that even

6

though Father knew Grandmother was not mentally or emotionally stable, Father left his children in Grandmother's care.

McGlory also testified that Father had reportedly threatened the Mother of the children. According to McGlory, Mother reported an incident of domestic violence, committed by Father against Mother, when the children were present. On one of those occasions, Father threw E.B. McGlory testified that the Department learned Father threatened the children's foster parents, told them he knew where they lived and that he would come after them and his children. As to her opinions, McGlory testified:

> Q. Do you feel that [Father], his rights should be terminated based on the fact that he engaged in conduct, domestic violence, and actually threw one of the children, that endangered the children involved in this case, and that he allowed the children to remain with others who he knew were -- his mother, who he knew was not appropriate to take care of children, or not in a good mental state to take care of young children, and that he also parented while he was under the influence of drugs? Do you believe that all of these things endangered their physical and emotional well-being?
> A. Definitely.
> Q. And created conditions and surroundings which endangered their physical and emotional well-being?
> A. Definitely.

McGlory also addressed the Department's goals for the children. According to McGlory, Father's sister, based on the Department's recent out-of-state home study, as well as the children's current foster parents, are all interested in the children. McGlory said that Father's sister and the foster parents are all willing to

7

provide the children with a forever home, a home safe of any criminal activity, drug abuse, instability, and domestic violence. McGlory also testified that family members could continue to take care of the children's educational needs; Father's sister, either through an adoption or a family placement, could keep positive people around the children, a situation representing an improvement over the circumstances that exist with their parents.

McGlory explained the children are doing well with their foster parents and have done well while they've been in foster care. McGlory had no objection to leaving the children with their current foster family, except she did say that placing a child with "family is always our first consideration." McGlory thought the way the children have been treated and behaved in their current foster placement has "been great."

## B. Testimony of Brittany Bailey

Brittany Bailey, an investigator with Child Protective Investigations, also testified at trial. She testified that she investigated a case in which Father, who is twenty-eight, was an alleged perpetrator who fathered a child by a sixteen-year-old and is currently incarcerated. The child he fathered is in CPS care. Bailey confirmed that Father's sexual relationship with the sixteen-year-old was a crime. During that investigation, Bailey testified that she also learned of another ongoing sexual relationship Father had with a thirteen-year-old when he was twenty-eight. Other

evidence obtained during the investigations included sexually related photographs and text messages shared between Father and the thirteen-year-old. Bailey felt Father acted in a predatory manner toward the child and explained the sixteen-year-old victim contracted STDs from Father. Bailey testified this caused concern about Father raising a young daughter and modeling appropriate behavior for his young son.

Bailey confirmed that at the time of those investigations, Father's home was filthy and had no air conditioning. Bailey indicated it was in the children's best interest that Father's rights be terminated so they can be adopted by family or foster parents who could provide an appropriate home absent sex abuse and with appropriate utilities.

## C. Other Evidence

Exhibits admitted in the trial include records showing that Father tested positive multiple times for marijuana after the children were removed from their home. Another exhibit included a CPS Referral for Evaluation and Treatment Services, a report that details an altercation between Father and Mother where Father assaulted Mother while Mother held their oldest child and knocked her to the ground. The affidavit supporting the removal is another of the exhibits admitted in the trial. Records from social counselors show Father reported that he has a history of past domestic violence, but he claimed the woman involved in that incident "recanted."

Additional records admitted in the trial show Father's referral to and participation in a Batterer's Intervention and Prevention Program. The counselor Father saw in that program noted that Father denied any abuse or domestic violence in his relationship with Mother, but he did acknowledge verbal abuse on his part and by a prior partner, the mother of one of his other children.

At one point, the records of Father's social counselors show that Father was making progress toward completing some of the requirements of his plan. The counselor completed a Psycho-social Assessment of Father, and that assessment is included in the records. The assessment states that Father reported a volatile relationship with a prior partner, the mother of one of his other children, who called the police after he restrained her during a fight. That counselor's records note that "[Father] stated [Mother] had claimed there was physical abuse towards the kids. [Father] stated she used pills and cocaine expressing she liked to party." The counselor's clinical impressions reflect his impression that Father has "[i]ntermittent explosive behaviors" and "cannabis use disorder."

Additional records admitted include those from the Alcohol and Drug Abuse Council. That assessment shows a preliminary diagnosis of mild cannabis substance use disorder.

**D. Trial Court's Findings**

The trial court found by clear and convincing evidence that terminating the parent-child relationship between Father and E.M. and E.B. is in the children's best interest and that the Department proved Father's rights should be terminated under subsections D, E, O, and P by clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), and (P), (2). Those predicate grounds include that Father knowingly allowed the children to remain in conditions that endangered their physical and emotional well-being, engaged in conduct or knowingly left the children with persons who engaged in conduct that endangered their physical or emotional well-being, failed to follow a court-ordered service plan, and used a controlled substance in a manner that endangered the health and safety of the children. *See id.*

### III. Standard of Review

Due process mandates that the Department prove its claims in a trial to terminate the parent-child relationship by clear and convincing evidence. *See id.* § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012) (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)); *see also In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (citations omitted). "Due process compels this heightened standard because terminating the parent-child relationship imposes permanent, irrevocable consequences." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (citations omitted).

Clear and convincing evidence is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007. Given this high evidentiary burden at trial, appellate review in a parental-rights termination case requires a heightened standard of review. *See In re N.G.*, 577 S.W.3d at 235. Additionally, due process requires that parents must be allowed a meaningful appeal of the order terminating the parent's rights. *See id.*

When conducting a legal sufficiency review of the termination of parental rights,

> a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.F.C.*, 96 S.W.3d at 266 (emphasis original); *see also In re E.N.C.*, 384 S.W.3d at 802.

In a factual sufficiency review, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*,

96 S.W.3d at 266. We must determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We defer to the factfinder's findings, and we cannot substitute our judgment for the factfinder's. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole arbiter of assessing the witnesses' credibility and demeanor. *See id.* at 109 (quoting *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (applying previous version of the statute). In addition to the other predicate findings, Father challenges the endangerment findings, and given the potential future consequences of a D or E finding for a parent to a different child, due process concerns and the requirement for a meaningful appeal, mandate an analysis of these grounds. *See In re N.G.*, 577 S.W.3d at 236–37; *In re C.M.C.*, 554 S.W.3d 164, 171 (Tex. App.—Beaumont 2018, no pet.) (reviewing D and E findings given the collateral consequences of an affirmative finding on future termination proceedings to other

13

children); *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(M) (providing a sufficient basis to terminate parental rights based on a previous section 161.001(b)(1)(D) or (E) finding).

### IV. Analysis

In five issues, Father challenges the legal and factual sufficiency of the evidence to support terminating Father's rights under subsections D, E, O, and P and the best-interest finding.

### A. Endangerment Findings

We first consider whether the evidence is sufficient to support the findings terminating Father's rights under sections 161.001(b)(1)(D) and (E) before considering Father's other issues. *See In re N.G.*, 577 S.W.3d at 235–36. If the evidence is sufficient as to one of these grounds, it will not be necessary for us to address Father's issues challenging the other predicate grounds for terminating his rights because sufficient evidence as to one of the predicates along with sufficient evidence to support the best-interest finding is all that is needed for an intermediate appellate court to affirm the order Father challenges here. *See id.* at 232–33. Because evidence of grounds D and E is often interrelated, we may consolidate our review of the evidence supporting these grounds. *In re J.L.V.*, No. 09-19-00316-CV, 2020 WL 1161098, at *10 (Tex. App.—Beaumont Mar. 11, 2020, pet. denied) (mem. op.).

Subsection D allows for the termination of parental rights if clear and convincing evidence supports that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Under subsection E, parental rights may be terminated if clear and convincing evidence establishes the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id.* § 161.001(b)(1)(E). The Texas Supreme Court has explained that "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (citation omitted). To endanger a child, "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*

"Subsection D requires the endangerment to the child to be a direct result of the child's environment." *See In re J.H.*, 09-20-00056-CV, 2020 WL 4516860, at *10 (Tex. App.—Beaumont Aug. 6, 2020, no. pet) (mem. op.) (citation omitted). "Endangerment under subsection (D) arises from a child's environment and a parent's disregard for the potential for danger created by the environment." *In re I.V.H.*, No. 01-19-00281-CV, 2019 WL 4677363, at *5 (Tex. App.—Houston [1st Dist.] Sept. 26, 2019, pet. denied) (mem. op.) (citation omitted). We consider the child's environment before the Department obtained custody in our subsection D

15

endangerment analysis. *See In re J.L.V.*, 2020 WL 1161098, at \*10. Under subsection D, termination may be based on a parent's single act or omission. *In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied). It is unnecessary that a parent know with certainty the child is in an endangering environment; instead, awareness of the potential for danger and disregarding the risk is enough to show endangering conduct. *See In re J.H.*, 2020 WL 4516860, at \*10.

To terminate a parent's rights under subsection E, the evidence must "show a conscious course of conduct." *In re C.M.C.*, 554 S.W.3d at 172 (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). In our analysis of subsection E, we may consider actions occurring before and after a child's birth to establish a "course of conduct." *See id.* (citation omitted).

Evidence of a parent's drug use can support the conclusion that the child's surroundings endanger her physical or emotional well-being under subsection D and qualify as a "voluntary, deliberate, and conscious course of conduct endangering the child's well-being under subsection (E)." *In re C.V.L.*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. denied) (citation omitted); *In re S.R.*, 452 S.W.3d 351, 361–62 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A parent's continued drug use after the child's removal is conduct that risks parental rights and may be considered as supporting an endangering course of conduct under E. *See Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253 (Tex.

16

App.—Houston [1st Dist.] 2006, no pet.) (noting that mother's continued narcotics use after child's removal in the face of drug testing, jeopardized her relationship with her child).

Likewise, "[d]omestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re T.R.L.*, No. 10-14-00290-CV, 2015 WL 1020865, at *5 (Tex. App.—Waco Mar. 5, 2015, no pet.) (mem. op.) (citation omitted). Abusive or violent conduct by a parent or other resident of a child's home can produce an environment endangering to the child's physical or emotional well-being. *See id.*; *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied); *see also In re J.S.*, No. 09-20-00294-CV, 2021 WL 2371244, at *8 (Tex. App.—Beaumont June 10, 2021, no pet.) (mem. op.).

Through the caseworker's testimony and record admitted at trial, the Department established that Father tested positive for marijuana on multiple occasions after the children's removal with the most recent positive test occurring after trial commenced. Additionally, the evidence established Father had been diagnosed with cannabis use disorder and intermittent explosive behavior. The caseworker's testimony further confirmed Father's anger issues. Moreover, the caseworker confirmed that despite having an awareness that Grandmother was not an appropriate caregiver for the children, he left E.M. and E.B. with her when they were at an age where they could not care for themselves. The caseworker confirmed

17

that Mother reported Father had engaged in domestic violence against her, and during one such outburst had thrown E.B. Additionally, the trial court heard from the caseworker about threats Father made to the children's foster family. Finally, the trial court heard from an investigator regarding Father's inappropriate sexual relationships with two teenagers, one of which included getting the sixteen-year-old pregnant, spreading STDs, and the exchange of sexual photographs and text messages. The investigator expressed concern regarding Father's ability to parent his young children. The trial court also learned that during the recent investigation of those incidents, Father admitted to continued marijuana use.

Controverting evidence at trial included records admitted that Father repeatedly denied any domestic violence in his relationship with Mother and that he made strides to comply with his services. There were some negative drug tests prior to trial as well.

The testimony and other evidence admitted during trial was enough for the trial court to conclude that Father had exposed E.M. and E.B. to risk of loss or injury. *See Boyd*, 727 S.W.2d at 533. Father's ongoing drug use following the children's removal, his arrests, his decision to leave the children with an inappropriate caregiver, and his violent outbursts supported the trial court's determination that Father knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being. *See* Tex.

18

Fam. Code Ann. § 161.001(b)(1)(D). With respect to subsection E, the same evidence could have led the trial court to reasonably form a firm belief that Father engaged in a voluntary, deliberate, and conscious course of conduct that endangered the children's well-being. *See In re C.V.L.*, 591 S.W.3d at 751. "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Specifically, the evidence established, in the form of the caseworker's testimony and drug tests admitted at trial, that after the Department removed E.M. and E.B. and during the pendency of this case, Father tested positive for drugs even after the case was first called to trial. Father's continued drug use after E.M. and E.B.'s removal is conduct that risked his parental rights and may be considered as supporting an endangering course of conduct. *See Cervantes-Peterson*, 221 S.W.3d at 253; *see also In re S.R.*, 452 S.W.3d at 361–62.

Additionally, the trial court heard evidence of Father's violent outbursts, which included throwing E.B. and threats against the foster parents, caseworker, and judge. "A parent's drug use, incidents of domestic violence, criminal history, and employment and housing instability prior to and during the case create a course of conduct from which the factfinder could determine the parent endangered the child's emotional and physical well-being." *See In re J.S.*, 2021 WL 2371244, at *9 (citing

19

*In re M.C.*, No. 09-18-00436-CV, 2019 WL 1561824, at \*4 (Tex. App.—Beaumont Apr. 11, 2019, no pet.) (mem. op.)).

Viewing the evidence in the light most favorable to the trial judge's findings, we conclude that the trial judge could reasonably have formed a firm belief or conviction that Father (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *see also In re J.F.C.*, 96 S.W.3d at 266; *In re J.T.G.*, 121 S.W.3d at 125. We conclude the Department established, by clear and convincing evidence, that Father committed the predicate acts enumerated in subsections D and E. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). Further, considering the entire record, we conclude the disputed evidence the trial court could not reasonably have credited in favor of its endangerment findings is not so significant that the court could not reasonably have formed a firm belief or conviction that Father endangered the children. *See In re J.F.C.*, 96 S.W.3d at 266.

We need not address the sufficiency of the evidence to support violations of subsections O and P. *See In re J.S.*, 2021 WL 2371244, at \*9–10 (noting if there are multiple predicate grounds, we will affirm based on any one ground as only one is

20

necessary to terminate parental rights). We overrule issues one and two, and we decline to address issues three and four. *See id.*; *see also* Tex. R. App. P. 47.1 (requiring appellate court to issue a written opinion as brief as practicable that addresses all issues necessary to the appeal's disposition).

## B. Best Interest

Trial courts have wide latitude in determining the children's best interest. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). There is a strong presumption that the children's best interest is served by keeping them with their parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (citing Tex. Fam. Code Ann. § 153.151); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also* Tex. Fam. Code Ann. § 153.131(b). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

The Family Code outlines factors to be considered in determining whether a parent is willing and able to provide a safe environment for the children. *See id.* § 263.307(b). Several other nonexclusive factors may be considered when determining whether termination of parental rights is in the best interest of the children, including: (1) the desires of the children, (2) the emotional and physical needs of the children now and in the future, (3) the emotional and physical danger to the children now and in the future, (4) the parental abilities of the individuals seeking custody,

21

(5) the programs available to assist these individuals to promote the best interest of the children, (6) the plans for the children by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the act or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (characterizing the *Holley* factors as "nonexclusive"). No particular *Holley* factor is controlling, and evidence of one factor may be enough to support a finding that termination is in the children's best interest. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied) ("Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of a child.") (citations omitted).

A parent's past conduct is relevant to determining the parent's present and future ability to care for a child. *See In re C.H.*, 89 S.W.3d at 28. Evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. *See id.* The best interest analysis may include direct or circumstantial evidence, subjective factors, and the totality of the evidence. *See In re J.S.*, 2021 WL 2371244, at *10. If, considering the entire record, no reasonable factfinder could

22

form a firm belief or conviction that termination was in the children's best interest, then we must conclude the evidence is legally insufficient to support termination. *See In re J.F.C.*, 96 S.W.3d at 266 (explaining legal sufficiency standard of review).

We have previously explained the trial evidence shows Father's history of drug use, domestic violence, emotional outbursts, and predatory relationships with teenaged girls leading to his arrest. The trial court heard testimony from the caseworker and investigator that they recommended termination of Father's parental rights and that the termination of his parental rights would be in the children's best interest. Considering this testimony, the trial court could have reasonably concluded Father would continue using drugs and engage in conduct that would expose him to criminal liability, impeding his ability to provide the children with a safe and stable home. The trial court heard that the children are doing well in their foster placement, and Father's sister's home study had recently been approved. The trial court also heard testimony that either the aunt or the foster family would be appropriate caregivers and could provide the children with a safe environment, unlike Father.

Having considered the evidence related to best interest, deferring to the trial court's determinations on witness credibility, the resolution of conflicts in the evidence, and the weight to be given the testimony, we conclude that the statutory and *Holley* factors weigh in favor of the trial court's finding that termination is in

23

the children's best interest. *See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a), (b); *Holley*, 544 S.W.2d at 371–72. We conclude the evidence is legally and factually sufficient to support the trial court's finding that termination of Father's parental rights is in the children's best interest. We overrule issue five.

## V. Conclusion

Having concluded the evidence is legally and factually sufficient to support the trial court's findings under subsections D and E and the trial court's finding that terminating Father's parental rights is in the children's best interest, we affirm the trial court's order terminating Mother's and Father's rights.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 2, 2022
Opinion Delivered April 7, 2022

Before Golemon, CJ, Kreger and Horton, JJ.