In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-25-00017-CV
IN THE INTEREST OF L.M.

On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. F-242,506

## MEMORANDUM OPINION

Father appeals an order terminating his parental rights to his minor child, Lily.[1, 2] The trial court found, by clear and convincing evidence, that statutory grounds exist for termination of Father's parental rights and that termination of his parental rights was in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (2). In three issues, Father challenges the legal and factual

---

[1]To protect the identity of the child, we use pseudonyms to refer to the child, other family members, and refer to the parents as "Mother" and "Father." *See* Tex. R. App. P. 9.8(b)(2).

[2]Mother's parental rights were terminated, but she is not a party to this appeal.

sufficiency of the evidence to support the predicate grounds and the best interest finding to support the termination. As explained below, we affirm the trial court's Order of Termination as to Father.

**Background and Facts Leading to Removal**

Lily was born in December 2022. In January 2023, the Department of Family and Protective Services ("the Department") filed a petition to terminate Mother's parental rights to Lily.[3] The Department supported its petition with the affidavit of its investigator, Lashanda Mayon. Mayon's affidavit set out the information leading to Lily's removal.

According to Mayon's affidavit, shortly after Lily's birth, the Department received an initial referral alleging the neglectful supervision of Lily. After Mother gave birth to Lily, Mother and Lily tested negative for narcotics, but Lily was admitted to the hospital after testing positive for syphilis. Per the affidavit, Mother failed to get prenatal treatment for syphilis and the medical staff believed syphilis exposure could have been prevented. The affidavit stated that Mother had contacted Father for help and had asked Father to present his apartment as her home because Mother knew her home would not pass inspection by the Department. The Department assessed Father's residence and found it to be safe. The affidavit

---

[3]Father was not a party to this original petition and was later added after DNA testing confirmed he was Lily's biological father.

detailed Mother's history with the Department in Texas and Louisiana. In March 2019, Mother was incarcerated in Louisiana and left her two older children "Larry" and "Leon" with her mother ("Grandmother"), despite knowing Grandmother could not provide a safe environment for the children. Grandmother then left the children with a stranger. While the children were with the stranger, they experienced injuries, including cuts, burns, and head injuries. Larry and Leon were then placed in state custody. In January 2021, Mother was again incarcerated and left her child "Lola" with Grandmother who was accused of abusing crack cocaine. But Grandmother tested negative and neglectful supervision was ruled out. In September 2021, The Department again received a report of neglectful supervision of Lola by Mother and Grandmother including unsanitary conditions in their home and drug use. Mother had also given birth to "Lyle," who tested positive for amphetamines and methamphetamines at birth.[4] At this time, Grandmother tested positive for cocaine. The Department removed Lyle and placed him in foster care. In August 2022, Mother's parental rights to Lola were terminated. The affidavit concluded with a statement that the Department has "serious concerns" regarding neglectful supervision of Lily and Mother's drug use.

On January 4, 2023, the trial court signed an order naming the Department as Lily's temporary managing conservator. In April 2023, the Department filed a first

---

[4]Father is also the biological father of Lyle, but Lyle is not subject to this suit.

amended original petition for protection of a child, naming Father as the father of Lily. Subsequent DNA testing confirmed Father's paternity. In February 2024 and later in May 2024, the trial court signed two orders granting Mother a monitored return of Lily.[5] In July 2024, Lily and Mother tested positive for cocaine. The Department then removed Lily from Mother's care and placed her into foster care.

**Trial**

**Schrietta Henson**

Schrietta Henson testified that she has been employed with the Department for eighteen years, and in that time, she has worked as conservatorship supervisor and an investigative supervisor. Henson stated that when Lily was born in December 2022, both Mother and Lily tested negative for narcotics, but the hospital staff was on alert because Mother had previously had her rights terminated to her other children. At birth, Mother had syphilis, and Lily tested positive for syphilis. According to Henson, medical staff told Mother during her pregnancy to get treatment for syphilis and chlamydia, but she did not seek treatment for either condition. After the Department became involved, it performed a hair follicle test on Mother, which shows drug use "about 90 to a hundred days" before the test, and Mother tested positive for methamphetamines and cocaine. Mother previously had Lyle removed at birth due to his testing positive for narcotics. Henson testified that

---

[5]The trial court also signed orders extending the dismissal date in the case.

4

at the time of Lyle's removal, Mother was living with Grandmother, who tested positive for cocaine and methamphetamines. The home they were living in was unsuitable for children, cluttered, littered with trash, had a bathroom full of feces, and mold growing in the kitchen. Medical records for both Mother and Lily were admitted without objection.

Pictures were admitted of Father holding Lily in the hospital while Lily was in the neonatal intensive care unit ("NICU"). Henson testified that Mother and Father knew that Father was the biological father of Lily and Lyle, and that Father would have known that Mother uses drugs. Henson stated that Father appears to be complicit with Mother's drug usage. A copy of Lyle's removal affidavit was admitted, and Henson testified that Mother's parental rights to Lyle were terminated.

Henson testified that she "[d]efinitely" had concerns about Father's ability to parent Lily. According to Henson, Father is fifty-eight years old, in a relationship with a minor, and is a registered sex offender. Additionally, Father is on parole for sexual assault. The Department admitted copies of Father's criminal convictions including his conviction for second-degree felony sexual assault in which he received twenty years incarceration in the Texas Department of Criminal Justice, a third-degree felony charge for retaliation related to the sexual assault charge in which he threatened to kill the complainant and her family, and a charge for interfering with an emergency call by preventing the victim of his sexual assault case

5

from calling the police.[6] The Department also admitted a copy of Father's conviction for credit card abuse. Henson stated that Father is not protective of Lily, noting that Father told the Department he would monitor Mother by making her do her drug testing, and it was "concerning that [Mother] was still testing positive" during this case.

Father was arrested for a parole violation and spent several months incarcerated. The Department admitted copies of jail calls placed by Father into evidence without objection. Henson agreed that the recorded jail calls show Father attempting to manipulate young women and asking them to commit perjury. In the calls, Father is heard telling other people to notify another woman with whom he has a child who is the subject of another case with the Department. This woman also has a criminal history, including sexual assault of a minor. Henson agreed that it was concerning that Father associates with individuals with criminal histories, including someone charged with sexual assault of a minor, as this woman still has visitation with Father's other child, and could be around Lily. Father also had several jail calls with "Kathy[,]" the minor he was in a relationship with as of trial. According to Henson, in those calls, Father can be heard calling Kathy "baby[,]" telling Kathy he loves her, to be "tough[,]" to lie to the parole board about their relationship, and

---

[6]Father was on parole for a twenty-year sentence for his second-degree felony sexual assault conviction.

discussing stolen or fake debit cards that he is trying to dispose of. Henson agreed that later, in another jail call, Father told his other child's mother to act like she was Kathy and tried to get Kathy to go along with the story. Henson stated that Father was kicked out of his therapy group for his relationship with a minor and that Kathy was living at his home the entire time he was incarcerated. Father claimed that Kathy was just a house sitter, but her clothes were in his bedroom closet, and in a jail call Father asked Kathy to touch her private area for him. Henson also interpreted a conversation between Father and Kathy to mean that Father had drugs or was selling drugs in his house. In a jail call between Father and Mother, Father and Mother discuss a "cookie" which Henson stated that Mother identified as "crack." Henson believed that Father's jail conversations indicate that "he's coming out [of jail] to engage in criminal activities by selling drugs."

During cross-examination, Henson agreed that Father "[f]or the most part" has consistently been at every hearing and attended visitations with Lily that were generally appropriate. But Henson stated,

> I'll just continue to express my concerns regarding the possible criminal activity along with [Father's] being currently on parole and the charge that he's currently on parole for and along with if he's currently still involved with the minor. I believe she may not be a minor anymore, but he started that relationship before.

Henson testified that she was not aware whether Father had completed his parole, but that it was revoked because he was removed from therapy after continuing a

7

relationship with Kathy. She also agreed that Father has custody of another child and that she did not know whether Father tested positive for drugs during the pendency of this case. She reiterated that she had concerns about Father protecting Lily and Father's ability to provide stability for Lily. Henson believed that Father knowingly allowed his child to remain in conditions or surroundings which endangered his child's physical or emotional wellbeing, and she testified that the Department has never been able to place Lily with Father due to their concerns about Father. Henson could not provide an opinion about Father as of trial, because she left this case in September 2023.

**Karisha Ellison**

Karisha Ellison testified that she is employed with Texas Family Care Network and was previously employed as an investigator with the Department for ten years. Ellison discussed Mother's failed monitored return of Lily in which Lily tested positive for cocaine, Lily's filthy physical appearance while in Mother's care during this monitored return, Mother's multiple failed drug tests, and Mother's continued association with known criminals. Ellison testified that although Father did not place Lily with Mother, he had contact with Lily and Mother during Lily's monitored returns with Mother, and did not question Lily's physical appearance or Mother's care of Lily. Ellison had concerns about Father being a registered sex offender, his poor decision making, and his engaging in an inappropriate relationship

8

with a minor. Ellison agreed that Father wants the Department out of his life. Ellison stated that Father has not successfully completed therapy related to his parole because he continued to do the activities against the rules of therapy and was kicked out of therapy. According to Ellison, there were no services that the Department could offer to help Father stop selling drugs or help him stop manipulating other people to lie to the authorities, and these are all choices made by Father.

**Princess Johnson**

Princess Johnson testified that she is Lily's guardian ad litem and is employed by CASA. Johnson stated that Lily was "two or three" at the time of trial and that she has met Lily several times while assigned to this case. A copy of Johnson's CASA report was admitted at trial. Johnson stated that she believed it was in Lily's best interest for Father's parental rights to be terminated. According to Johnson, Father makes poor life choices, he does not take Lily into consideration, he chooses himself, and his first choice is not his child. She agreed Father's jail calls were concerning, and his discussion about criminal activities including having a relationship with a minor, having possession of debit cards in other peoples' names, and selling drugs is an environment Lily should not be exposed to. Johnson acknowledged that Father currently has possession of another child and that he takes good care of that child and would likely "give [Lily] the same care." She also agreed

that his relationship with Kathy did not pose an immediate physical or emotional endangerment or affect Lily's welfare or development.

Johnson stated that Lily is currently in foster care because there was not a suitable blood relative or home to take Lily. She testified that Lily's needs are being met in her current placement, and she is adjusted and doing well.

**Father**

Father testified that he is an "excellent father." He stated he is not a danger to Lily and that he has appropriate housing, bedding, food and childcare for Lily. According to Father, he is currently employed, though he is on medical leave. Father confirmed he is currently in a relationship with Kathy. He did not agree that the big age gap in his relationship had any bearing on his ability to care for Lily or the child currently in his care. Father stated he does not drink alcohol and has continuously tested negative for narcotics during the pendency of the case. Father denied any criminal activity and stated a friend asked him to hold the debit cards for him. Father stated that he has not been presented "one single concern" regarding his case with his other child, and he still has his other child in possession. Father testified he has family support to help with his children. Father denied having any contact with Mother during her pregnancies and that he did not know he might be the father of her children. Father testified his parole is complete and he is not subject to any terms or conditions. He currently has visitation with Lily every two weeks for an hour.

10

Father did not believe it was in Lily's best interest for his parental rights to be terminated and agreed that the Department has presented no evidence that he is an immediate danger to the physical or emotional development of Lily and asked to be named Lily's managing conservator.

**The Termination Order**

After the bench trial, the trial court signed a final order terminating Father's parental rights to Lily. The trial court found that the Department had shown, by clear and convincing evidence, that it was in Lily's best interest for Father's parental rights to be terminated. *See* Tex. Fam. Code Ann. § 161.001(b)(2). The trial court also found that the Department had shown by clear and convincing evidence grounds for termination of Father's parental rights under section 161.001(b)(1)(D) and (E). *See id*. § 161.001(b)(1)(D), (E). The trial court found Father knowingly placed or knowingly allowed Lily to remain in conditions or surroundings which endangered her physical or emotional well-being and had engaged in conduct or knowingly placed Lily with persons who engaged in conduct which endangered her physical or emotional well-being.

On appeal, Father argues that the evidence is legally and factually insufficient to support termination under sections 161.001(b)(1)(D), (E) and (2).

## Standard of Review

Termination of parental rights requires proof by clear and convincing evidence. *See id.* § 161.001(b). Under the Family Code, "'[c]lear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *see In the Int. of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (citation omitted). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b); *In the Int. of J.L.*, 163 S.W.3d at 84.

In reviewing the legal sufficiency of the evidence in a parental rights termination case, we must consider all the evidence in the light most favorable to a finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In the Int. of J.O.A.*, 283 S.W.3d 336, 344–45 (Tex. 2009) (citing *In the Int. of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* In a factual sufficiency review, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In the Int. of J.F.C.*, 96 S.W.3d at 266 (citing *In the Int. of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). We must determine "'whether the evidence is such

12

that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id*. (quoting *In the Int. of C.H.*, 89 S.W.3d at 25). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (citation omitted). In cases tried to the bench, the trial court in its role as factfinder determines the credibility and weight of the witnesses' testimony and resolves any inconsistencies or conflicts in the evidence. *See Webb v. Crawley*, 590 S.W.3d 570, 578 (Tex. App.—Beaumont 2019, no pet.). We defer to the factfinder's credibility determinations if they are not unreasonable. *See In the Int. of J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

## Analysis

### Predicate Grounds

In his first two issues, Father challenges the sufficiency of the evidence supporting the trial court's endangerment findings; therefore, we consider whether the evidence is sufficient to support terminating Father's rights under subsections (D) and (E). *See In the Int. of N.G.*, 577 S.W.3d 230, 235–36 (Tex. 2019) (per curiam). If the evidence is sufficient regarding one of these grounds and sufficient evidence supports the best interest finding, we will affirm the termination order. *See*

*id.* at 232–33. Since evidence of grounds (D) and (E) is often interrelated, we consolidate our review of these grounds. *See In the Int. of J.L.V.*, No. 09-19-00316-CV, 2020 Tex. App. LEXIS 2070, at *33 (Tex. App.—Beaumont Mar. 11, 2020, pet. denied) (mem. op.).

Subsection (D) allows for the termination of parental rights if clear and convincing evidence supports that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Under subsection (E), parental rights may be terminated if clear and convincing evidence establishes the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id.* § 161.001(b)(1)(E). The Texas Supreme Court has explained that "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (citation omitted). To endanger a child, "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* (citation omitted).

"Subsection D requires the endangerment to the child to be the direct result of the child's environment." *See In the Int. of J.H.*, No. 09-20-00056-CV, 2020 Tex. App. LEXIS 6189, at *34 (Tex. App.—Beaumont Aug. 6, 2020, no pet.) (mem. op.) (citation omitted). "Endangerment under subsection (D) arises from a child's

14

environment and a parent's disregard for the potential for danger created by the environment." *In re I.V.H.*, No. 01-19-00281-CV, 2019 Tex. App. LEXIS 8659, 2019, at *14 (Tex. App.—Houston [1st Dist.] Sept. 26, 2019, pet. denied) (mem. op.) (citation omitted). In our subsection (D) endangerment analysis, we consider the child's environment before the Department obtained custody. *See In the Int. of J.L.V.*, 2020 Tex. App. LEXIS 2070, at *34. Under subsection (D), termination may be based on a parent's single act or omission. *In the Int. of A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied); *see also In the Int. of G.M.S.*, No. 09-24-00207-CV, 2024 Tex. App. LEXIS 7746, at *26 (Tex. App.—Beaumont Oct. 31, 2024, pet. denied) (mem. op.). It is unnecessary that a parent know with certainty the child is in an endangering environment; instead, awareness of the potential for danger and disregarding the risk is enough to show endangering conduct. *See In the Int. of J.H.*, 2020 Tex. App. LEXIS 6189, at *35.

To terminate a parent's rights under subsection (E), the evidence must "show a conscious course of conduct." *In the Int. of C.M.C.*, 554 S.W.3d 164, 172 (Tex. App.—Beaumont 2018, no pet.) (citing *In the Int. of J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)); *In the Int. of G.M.S.*, 2024 Tex. App. LEXIS 7746, at *26. In our analysis of subsection (E), we may consider actions occurring before and after a child's birth to establish a "course of conduct." *See In*

*the Int. of C.M.C.*, 554 S.W.3d at 172 (citation omitted); *In the Int. of G.M.S.*, 2024 Tex. App. LEXIS 7746, at \*26 (citation omitted).

"Generally, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *In the Int. of J.H.*, 2020 Tex. App. LEXIS 6189, at \*35–36 (Tex. App.—Beaumont Aug. 6, 2020, no pet.) (mem. op.) (citing *In the Int. of R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)). Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment together with other conduct may support a finding of endangerment under subsection (E). *See id.* (citing *In the Int. of A.R.M.*, No. 14-13-01039-CV, 2014 Tex. App. LEXIS 3744, at \*21 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.); *In the Int. of J.T.G.*, 121 S.W.3d at 133)) (evidence of father's prior criminal conduct, convictions, and imprisonment was relevant to endangerment determination).

A history of illegal drug use and drug-related criminal activity is conduct that subjects a child to a life that is uncertain and unstable, endangering the child's physical and emotional well-being. *In the Int. of S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). A parent's drug use, incarcerations, criminal history prior to and during the case create a course of conduct from which the factfinder may determine the parent endangered the

child's emotional and physical well-being. *In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021) ("A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment."); *In the Int. of J.O.A.*, 283 S.W.3d at 346 (noting a parent's "irresponsible choices" are probative of an endangerment finding).

In his first two issues, Father argues that the Department's "sole reason for terminating [Father's] parental rights was that [Father] has a prior criminal history which includes (1) sexual assault conviction (2) he was on parole and (3) a registered sexual offender." He argues that he was never convicted of statutory rape and that his criminal past does not rise to the level that endangers Lily. According to Father, his criminal activity alone is not enough to pose a specific danger to Lily. Finally, Father argues that the Department "found [him] suitable and awarded him custody of his [other child]."

According to the Department, Father's failure to report Mother during Lily's failed monitored return in which she subjected Lily to drugs and numerous physical ailments endangered Lily's physical and emotional well-being. The trial court also heard testimony that Father was in a relationship with a minor during the pendency of the case, and had a history of numerous convictions and charges, including sexual assault, and is a registered sex offender. Evidence also showed Father was

17

incarcerated during the case for violating his parole in his sexual assault case, kicked out of group therapy for continuing to have an inappropriate relationship with a minor, openly discussed selling drugs and criminal activity in recorded jail calls, and asked others to lie to the authorities. The trial court heard testimony that Lily would be subjected to his continued criminal activities and poor decision making if she was returned to his care.

Finally, we are unpersuaded by Father's argument related to his care of his other child. Father misplaces the Department's burden by conflating his other case with another child with Lily's case. The Department's burden is to show by clear and convincing evidence that terminating Father's rights to Lily was in her best interest. *See In re A.J.D.-J.*, 667 S.W.3d 813, 831 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("At trial, the Department had to prove by clear and convincing evidence that termination is in this child's best interest, not that the [parent's] rights should be terminated here even though they were not with respect to other children in another case.").

We conclude the trial court could have reasonably formed a firm belief or conviction that termination of Father's parental rights was supported under subsections D and E. *See In the Int. of J.F.C.*, 96 S.W.3d at 264–65. We conclude the Department established, by clear and convincing evidence, that Father committed the predicate acts enumerated in subsections D and E. Further,

considering the entire record, and applying the applicable standard of review as outlined above, we find the evidence factually sufficient to support the trial court's findings of endangerment of Lily by Father under subsections D and E. We conclude the disputed evidence the trial court could not reasonably have credited in favor of its endangerment findings is not so significant that the court could not reasonably have formed a firm belief or conviction that Father endangered Lily. *See In the Int. of J.F.C.*, 96 S.W.3d at 266. We overrule Father's first and second issues.

## Best Interest

Next, we address Father's argument that the evidence is legally and factually insufficient to support the trial court's best-interest finding. With respect to the child's best interest, there is a strong presumption that the best interest of a child is served by keeping the child with the parent. *See* Tex. Fam. Code Ann. § 153.131(b); *In the Int. of R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Even so, it is also presumed "the prompt and permanent placement of the child in a safe environment is...in the child's best interest." Tex. Fam. Code Ann. § 263.307(a).

In reviewing a parent's challenge to a best interest finding and when considering the non-exclusive factors outlined in *Holley v. Adams*, "courts focus on the best interest of the child, not the best interest of the parent." *In the Int. of H.M.R.J.*, No. 09-22-00171-CV, 2022 Tex. App. LEXIS 8471, at *26 (Tex. App.— Beaumont Nov. 17, 2022, no pet.) (mem. op.) (citation omitted); *see Holley v.*

*Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Additionally, the Department is not required to present evidence addressing all the *Holley* factors. *See In the Int. of C.H.*, 89 S.W.3d at 27. The fact that the Department does not present evidence on some factors does not preclude the trier of fact from forming a strong belief or conviction that terminating the parent's relationship with the child is in a child's best interest, particularly when the evidence is undisputed that the parent endangered the child. *See id*.

In a best interest analysis, the evidence supporting a trial court's subsection (D) and (E) findings may also support the trial court's best interest finding. *See In the Int. of T.R.S.*, No. 09-18-00482-CV, 2019 Tex. App. LEXIS 4913, at *15 (Tex. App.—Beaumont June 13, 2019, no pet.) (mem. op.) (noting that the same evidence that supports a trial court's subsection (D) and (E) findings may be relevant to the trial court's best interest finding). A trial court's best interest finding may be based on direct or circumstantial evidence, or it may be based on subjective factors that the trial court may have observed in the trial. *Id*. at *14–15. When evaluating what is best for a child's future, trial courts may consider a parent's past conduct when that conduct is relevant to the child's best interest. *Id*. Ultimately, the question is whether the evidence, when considered as a whole, allowed the trial court to reasonably form a firm belief or conviction that it was in Lily's best interest for the trial court to

terminate Father's parental relationship. *See In the Int. of C.H.*, 89 S.W.3d at 25, 27–28.

Here, the trial court was free to infer from the evidence that Father continually makes irresponsible choices and that his criminal activity was longstanding and persisted after Lily was born. For example, evidence was presented that Father had numerous convictions and charges and that he was a registered sex offender. The trial court heard testimony that Father engaged in an inappropriate relationship with a minor during the case's pendency and was kicked out of group therapy because of this relationship. Father exhibited a lack of protectiveness over Lily when he failed to report Mother's treatment of Lily during her monitored return, in which Lily later tested positive for cocaine and was found to have several severe and untreated physical afflictions on her body. The trial court heard evidence that Father's parole for sexual assault conviction was revoked during the pendency of this case, and while in jail, Father asked people to lie for him and openly discussed criminal activity in recorded jail calls. The trial court also heard evidence that the Department was concerned about the people with whom Father associated, due to their criminal histories. Finally, the trial court also heard testimony that Lily was doing well in foster care and all her needs were being met.

"While parental rights are of constitutional magnitude, they are not absolute." *Id*. at 26. Given Father's criminal history, manipulation of others, poor decision

making, lack of protectiveness over Lily, and questionable relationships, including that with a minor, the trial court could have reasonably formed a firm belief or conviction that terminating Father's parental rights so that Lily could be permanently placed in a safe home where her needs can be met is in the child's best interest. *See id.* at 27–28. We overrule Father's last issue.

## Conclusion

Having overruled Father's issues, we affirm the trial court's termination order.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on May 28, 2025
Opinion Delivered June 26, 2025

Before Golemon, C.J., Wright and Chambers, JJ.